CASE NO. 15-16440

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MANUEL de JESUS ORTEGA MELENDRES, *et al.*, Plaintiffs

v.

JOSEPH M. ARPAIO, Sheriff of Maricopa County,
Arizona; *et al.*, Defendants

and

DENNIS L. MONTGOMERY, Putative Intervenor

From the United States District Court
For the District of Arizona
The Honorable G. Murray Snow, Presiding
Case No. CV-07-2513

**EMERGENCY MOTION FOR STAY ON APPEAL**

EXPEDITED ORAL ARGUMENT REQUESTED

Larry Klayman, Esq.
FREEDOM WATCH, INC.
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

Jonathon Moseley, Esq.
FREEDOM WATCH, INC.
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Of Counsel (Not Admitted to Ninth
Circuit)

Attorneys for Putative Intervenor Dennis L. Montgomery

## <u>CIRCUIT RULE 27-3 CERTIFICATE</u>

As the moving party, Putative Intervenor Dennis Montgomery, by counsel, certifies that to avoid irreparable harm Montgomery must obtain relief in less than 21 days, including because his property has already been released to a third party and he is continually suffering new harm as the underlying case progresses, and because evidentiary hearings are scheduled to resume in September 2015. *See,* Minute Order, July 20, 2015 (Doc. No. 1179). These matters need to be resolved before the case progresses with plenty of time to prepare.

**(i)** Although they have not yet entered notices of appearances, the telephone numbers, e-mail addresses, and office addresses of the likely attorneys for the parties;

Stanley Young, Esq.
Andrew Carl Byrnes, Esq.
333 Twin Dolphin Road
Redwood Shores, CA 94065
syoung@cov.com
650-632-4700
Attorneys for Plaintiffs

Daniel Pochoda, Esq.
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
dpochoda@acluaz.org
602-650-1854
Attorney for Plaintiffs

Cecilia D. Wang
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT

39 Drumm Street
San Francisco, CA 94111
cwang@aclu.org
415-343-0775
Attorney for Plaintiff Melendres

Thomas P. Liddy, Esq.
CIVIL SERVICES DIVISION
MARICOPA COUNTY ATTORNEY'S OFFICE
222 North Central Avenue, Suite 1100
Phoenix, AZ 85005
liddyt@mcao.maricopa.gov
602-506-8541
Attorney for Defendant Joseph Arpaio and Maricopa County Sheriff's Office

Michele M. Iafrate, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
miafrate@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County Sheriff's Office

Deborah L. Garner, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
dgarner@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County Sheriff's Office

Melvin McDonald
JONES SKELTON & HOCHULI, PLC
2901 N. Central Avenue, Suite 800
Phoenix, AZ 85012-2728
mmcdonald@jshfirm.com
602-263-1700
Attorney for Defendant Sheriff Joseph Arpaio

Andre Segura, Esq.
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Fl.
New York, NY 10004
asegura@aclu.org
212-549-2676
Attorney for Plaintiffs

Anne Lai
UCI School of Law
401 E. Peltason Drive. Suite 3500
Irvine, CA 92616
alai@law.uci.edu
949-824-9894

Jorge M. Castillo
MALDEF
634 S. Spring Street, 11th Fl.
Los Angeles, CA 90014
jcastillo@maldef.org
213-629-2512
Attorney for Plaintiffs

Richard K. Walker
WALKER & PESKIND, PLLC
16100 N. 71st Street, Suite 140
Scottsdale, AZ 85254-2236
rkw@azlawpartner.com
480-483-6336
Attorney for Defendant Maricopa County

**(ii) Facts showing the existence and nature of the claimed emergency; and**

A dramatic transformation of the original case occurred in April 2015, which

is now targeting Dennis Montgomery, Putative Intervenor, although he is not a

party, has never been served, and should have nothing to do with the litigation. As

a result, Montgomery's rights have been violated and are continuing to be violated on a weekly and even daily basis in the case below. The underlying case was concluded by final judgment on October 2, 2013. (Docs. No. 606, 670.)

As one important example, on July 20, 2015, the presiding judge, the Honorable G. Murray Snow of the U.S. District Court for the District of Arizona ("District Court") granted a civil motion by the U.S. Department of Justice ("DoJ") to turn over to the U.S. Government the very same documents, data, and things that the U.S. District Court for the District of Nevada had already ordered DoJ to return to Montgomery once before. See, Transcript, July 20, 2015, Status Conference, *Melendres v. Arpaio,* Page 42-53, primarily Page 53 *(Emphases added);* Order, July 24, 2015. (Docket No. 1190.) Montgomery's intellectual property, medical records protected by the Health Insurance Portability and Accountability Act, proprietary trade secrets, work product, and personal property have been taken.

The U.S. District Court for the District of Nevada has already ruled that (1) the data, documents, intellectual property, tangible objects, and personal property at issue in this case belong to Dennis Montgomery, (2) none of it is classified, (3) the U.S. Government was required to return it all to Montgomery, and (4) the U.S. Government had deceived that court. See *Dennis Montgomery and the Montgomery Family Trust v. eTreppid Technologies, LLC, Warren Trepp and the U.S. Department of Defense*, Case Nos. 3:06-CV-00056-PMP-VPC and  3:06-CV-

00145-PMP-VPC, Order, Judge Philip M. Pro, March 19,2007, and *In the Mater of the Search of: The Residence Located at 12720 Buckthorne Lane, Reno, Nevada, and Storage Units 136, 140, 141, 142 and 143, Double R Storage, 888 Madestro Drive, Reno, Nevada,* Case Nos. 3:06-CV-0263-PMP-VPC and 3:06-MJ-00023-VPC, Order, Magistrate Judge Valerie P. Cooke, November 28, 2006 ("Nevada Orders").

Judge Snow did not order seizure documents and things *relevant* to the *Melendres v. Arpaio* case. Judge Snow ordered that "all" documents relating to Montgomery be indiscriminately seized and distributed to Plaintiff's counsel, non-party counsel, and to the DoJ, explicitly acknowledging they might be irrelevant.

Evidentiary hearings (Order, January 16, 2015, Page 2, Doc. No. 856) will reconvene September 22nd through 25th and September 29th through October 2nd, 2015. Minute Order, July 20, 2015 (Doc. No. 1179). Judge Snow has also scheduled regular interim hearings at which he typically issues orders, often without providing notice or due process, and often affecting Montgomery.

As a result, emergency treatment of Montgomery's motion to stay pending appeal is required.

**(iii) When and how counsel for the other parties were notified and whether they have been served with the motion; or, if not notified and served, why that was not done.**

Counsel for the other parties were notified via email on July 24, 2015,

before 9:00 AM local Arizona time, of Dennis L. Montgomery's intention to file this motion for stay on an emergency basis. Counsel will be served via email as soon as the motion has been filed with this Court.

## EMERGENCY MOTION FOR STAY

### I.  REQUEST FOR ORAL ARGUMENT

Dennis L. Montgomery ("Montgomery") respectfully requests oral argument on his motion, and expeditious handling of the motion and appeal.

### II.  INTRODUCTION

Montgomery respectfully moves this U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") to stay the proceedings.  Judge Snow admitted on July 20, 2015, that orders he has issued and continues to issue could be vacated if he later is recused.  It will be impossible to "put the genie back in the bottle" if the case is not stayed.

Montgomery seeks to intervene solely to protect his legal and property rights, which are being run roughshod on by Judge Snow without an opportunity for him to protect his rights, assert his interests, receive due process, or be heard.

On July 15, 2015, Montgomery filed his Notice of Appeal (Docket No. 1173) appealing from the trial court's --

> a) Order of May 14, 2015 (Docket No. 1093) denying Pro Hac Vice Admission of Jonathon Moseley Striking Putative Intervenor's Motion to Intervene and Striking Putative Intervenor's Motion to Disqualify. (Moseley being Montgomery's attorney as an associate to Larry Klayman.)
>
> b) Order of June 10, 2015 (Docket No.1164) Denying Motion for Disqualification

1

c) Order of July 10, 2014 (Docket No. 1167) Denying Motion For Reconsideration.

d) All other orders and rulings adverse to and/or which refer or relate to Putative Intervenor Dennis L. Montgomery.

This Court previously vacated Judge Snow's over-use of Justice Department monitors for matters that have

> no bearing on the constitutional rights at stake here. We therefore vacate these particular provisions and order the district court to tailor them so as to address only the constitutional violations at issue. See Milliken, 433 U.S. at 282.

*Melendres v. Arpaio*, Record No. 13-16285, U.S. Court of Appeals for the Ninth Circuit, Opinion April 15, 2015, page 23.

Yet many of the abuses against Montgomery's tangible property and intellectual property and rights are occurring through Judge Snow's orders to his monitors to seize Montgomery's property and take various actions without notice, due process, or an opportunity to be heard, such as on April 23, 2015, in the hearing and by Order, April 27, 2015, (Docket No. 1033).   Judge Snow ruled that his monitors would not be "shackled" by Defendants' constitutional rights. (Doc. No. 1117-1, Ex. 9., 5/14/15; Transcript at 49:15-21, 51, 56).

It would be impractical for Montgomery to also file a motion for a stay in the trial court because Judge Snow refused to allow his counsel to enter the case pro hac vice and for him to intervene in the case.

However, a motion to stay in the trial court below awaiting appeal (Docket No. 1171) was filed by Defendant Sheriff Joe Arpaio ("Arpaio") and Chief Deputy Gerard Sheridan ("Sheridan") (specially appearing) of Arizona's MCSO. On July 20, 2015, by a Minute Order at (Docket No. 1179), Judge Snow denied the motion.

## III. RELATED CASE WHICH MONTGOMERY RELIES ON

In a related petition before this Ninth Circuit, Defendant Arpaio and non-party Sheridan filed a petition for writ of mandamus on August 6, 2015, requiring Judge Snow's recusal. The petition was filed in *Joseph Arpaio and Gerard Sheridan v. U.S. District Court for the District of Arizona and Manuel de Jesus Ortega Melendres*, Case No. 15-72440. As this appeal is related, Montgomery's motion to stay is also being filed in Case. No. 15-72440 as the Court may consider consolidating the two appellate actions as related.

Montgomery concurs in and agrees with Arpaio's and Sheridan's petition, joins in their petition for the recusal of Judge Snow, and incorporates Arpaio's and Sheridan's petition in all respects as if set forth herein in support of his motion for a stay of this case, and also in support of his appeal directly.

Montgomery's motion for recusal of Judge Snow is virtually identical with Arpaio's and Sheridan's petition for writ of mandamus except in only two respects:

(1) Montgomery also explicitly moves that the Ninth Circuit vacate the orders issued by Judge Snow subsequent to the conflict of interest.

3

(2) Montgomery also filed an affidavit under 28 U.S.C. § 144 on May 7, 2015 (Docket No. 1067) which compels unconditionally and without subjective analysis or discretion that Judge Snow stop all work on the case and that a different judge hear the question of recusal.

Both pleadings seeking recusal by both Arpaio and Sheridan and here Montgomery are supported by the expert analysis of noted judicial ethics expert Professor Ronald Rotunda, whose affidavits are attached to each.

## IV.   STATEMENT OF FACTS RELEVANT TO THE MOTION

Prior to April 23, 2015, Dennis Montgomery had never been involved or mentioned in the case below.  Yet in the evidentiary hearing April 21-24, Judge Snow expanded the case, and *sua sponte* started attacking Montgomery.  See, Transcript, April 23, 2015, attached.

Judge Snow then denied Montgomery's motions seeking to receive due process, notice, and an opportunity to be heard guaranteed by the Fifth Amendment to the U.S. Constitution concerning his property and the due process clause of the Fourteenth Amendment to the U.S. Constitution.

The lawsuit filed in 2007 terminated on October 2, 2013, in the "Supplemental Permanent Injunction / Judgment Order."  (Docs. No. 606, 670.) Implementation was set for a hearing in April 2015.  (See, Order, January 16, 2015, Page 2, Doc. No. 856).

4

## V.    STANDARD OF REVIEW

Putative Intervenor requests a stay pending appeal pursuant to Federal Rules of Appellate Procedure ("FRAP") Rule 8. In *Nken v. Holder,* the Supreme Court noted four factors required:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

556 U.S. 418, 434 (2009).

## VI.    ARGUMENT

### A. STANDING OF MONTGOMERY

It has already been decided that the intellectual property, documents, data, work product, copyrighted material, and things are Montgomery's personal property.  *See* "Nevada Orders," identified, *supra.*  Montgomery has a personal stake in this matter in which his property has been seized by verbal order on April 23, 2015, and by written Order, April 27, 2015, (Docket No. 1033).

### B. PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF PREVAILING ON HIS APPEAL ON THE MERITS

#### 1)  Application *Pro Hac Vice*

Montgomery has a substantial likelihood of prevailing on his appeal on his attorney's motion to appear *pro hac vice*.  Montgomery has a right to choose

attorneys whom he believes will be knowledgeable enough of his circumstances to represent him effectively and meaningfully, whom he can afford, and who will protect his rights on other topics.

But here, especially, Montgomery would suffer unusual hardship. Montgomery is both indigent and medically disabled. He could not afford regular counsel. Also, the litigation is controversial and political, so that it would be extremely difficult to find a local lawyer whose livelihood depends upon regularly appearing before Judge Snow to defend Montgomery against this rush to judgment.

A person is entitled to his choice of counsel, including an attorney appearing *pro hac vice*: "A defendant's right to the counsel of his choice includes the right to have an out-of-state lawyer admitted pro hac vice." *U.S. v. Lillie*, 989 F.2d 1054, 1056 (9th Cir. 1993); *see also Panzardi-Alvarez v. U.S.*, 879 F.2d 975, 980 (1st Cir. 1989)("[A] decision denying a pro hac vice admission necessarily implicates constitutional concerns."), *cert. denied*, 493 U.S. 1082, 110 S. Ct. 1140, 107 L. Ed. 2d 1045 (1990). A person's right to retain counsel of his choice therefore represents " 'a right of constitutional dimension'" *U.S. v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir.1982) (citing *U.S. v. Wisniewski*, 478 F.2d 274, 285 (2d Cir.1973)), the denial of which may rise to the level of a constitutional violation. *Birt v. Montgomery*, 725 F.2d 587, 592 (11th Cir.) (*en banc*), cert. denied, 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984); *Wilson*, 761 F.2d at 278-79. The right

to retain counsel of choice stems from one's right to decide what kind of case he wishes to present. *U.S. v. Nichols*, 841 F.2d 1485, 1502 (10th Cir.1988).

"Attorneys are not fungible" and often "the most important decision a defendant makes in shaping his defense is his selection of an attorney." *U.S. v. Laura*, 607 F.2d 52, 56 (3d Cir.1979); *Nichols*, 841 F.2d at 1502; *Glasser v. U.S.*, 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942).

Judge Snow denied Moseley's application to be admitted *Pro Hac Vice* on unsupported speculation that there could be a conflict of interest. But the record does not contain any basis for disqualification. Moseley filed a "Clarification of Motion for Admittance *Pro Hac Vice* of Jonathon A. Moseley," dated May 13, 2015, (Docs. No. 1080, 1081) stating that *(emphasis added):*

> Neither Dennis L. Montgomery nor his counsel are adverse to Sheriff Arpaio, his deputies, the Cold Case Posse, or MCSO **in any respect**, particularly since this case involves a contempt proceeding over allegations of profiling illegal immigrants.

No party has moved for disqualification of Moseley as counsel for Montgomery. No facts have been entered in the record to establish any conflict.

Simply reciting that Moseley represents Arpaio in an unrelated matter does not establish any conflict of interest. Disqualification applies "where serious conflict exists." *See Dunton v. County of Suffolk*, 729 F.2d 903, 909 (2d Cir.1984), *amended* 748 F.2d 69 (2d Cir.1984). *The proponent of disqualification must*

_demonstrate the existence_ of a conflict of interest which is "serious."

The relevant test for disqualification is whether the other representation is "substantially related" to the current representation. _See Gas-A-Tron of Arizona v. Union Oil Co. of California_, 534 F.2d 1322, 1325 (9th Cir.), _cert. denied_, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). A substantial relationship is found if the factual contexts of the two representations are similar or related. _Trone v. Smith_, 621 F.2d 994 (C.A.9 (Cal.), 1980) _(emphasis added)._

> We held that the "relevant test for disqualification is whether the former representation is _**'substantially related' to the current representation.**_" Id. at 998; see Gas-A-Tron of Arizona, supra, 534 F.2d at 1325; _Westinghouse Electric Co. v. Gulf Oil Corp._, 588 F.2d 221, 223 (CA7 1978). "Substantiality is present _**if the factual contexts of the two representations are similar or related**_." _Trone_, supra, 621 F.2d at 998.

_Trust Corp. of Montana v. Piper Aircraft Corp._, 701 F.2d 85 (C.A.9 (Mont.), 1983) _(Emphases added)._

Here, the "_**the factual contexts of the two representations**_" are not "_**similar or related.**_" Id. Representation of Montgomery in the current case shares no operative facts nor factual circumstances in common with Arpaio's challenge to the constitutionality of Obama's executive order on amnesty for illegal aliens.

Montgomery has nothing to do with immigration, immigration enforcement or law enforcement. He has had no involvement with, role in, knowledge of, or experience in those topics. Montgomery has no position on the

proper way to conduct traffic stops, find probable cause, or the like.

### 2) Motion to Intervene

Montgomery has a substantial likelihood of prevailing on his appeal on his motion to intervene. The U.S. Government admits that they do not claim to own the documents, items, or things claimed and owned by Montgomery. The attorney representing the DoJ, Raphael Gomez, admitted in open Court on July 20, 2015:

> The United States ***does not know whether there are any documents in the Montgomery files*** that are in fact classified or sensitive, but ***there is a representation*** that there were documents that were of the United States.

Transcript, July 20, 2015, Status Conference, *Melendres v. Arpaio,* Page 43 *(Emphases added) (argument by Raphel Gomez for the DoJ).*

> MR. GOMEZ: Yes, Your Honor. I believe on May 8th ***the Court had issued an order to the defendants' counsel instructing the defendants' counsel to contact the United States; actually, the CIA general counsel's office***. At that point, we -- I'm an attorney in the Civil Division of the Department of Justice in Washington, D.C., and we were contacted, and pursuant to that instruction we had spoken to defendants' counsel, and with the purpose of, ***since there had been a representation made that documents contained in what I'll refer to as the Montgomery documents*** were either documents of the United States or documents that -- implied – were classified or sensitive.

Transcript, July 20, 2015, Status Conference, *Melendres v. Arpaio,* Page 42 *(Emphases added).*

That is, Judge Snow ordered Montgomery's property to be handed over to Raphael Gomez of the DoJ based on the off-chance and mere possibility that there

might be government documents among Montgomery's documents. ***This is the same "callous disregard" for Montgomery's rights*** that the Honorable Phillip Pro and Magistrate Valerie Cooke condemned in the Nevada Orders, *supra.*

Federal Rules of Civil Procedure ("FRCP") Rule 24 governs intervention by additional parties in existing litigation in the federal courts:

> Rule 24. Intervention
>
> (a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:
>        * * *
>   (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
> (b) PERMISSIVE INTERVENTION.
>   (1) *In General.* On timely motion, the court may permit anyone to intervene who:
>        * * *
>   (B) has a claim or defense that shares with the main action a common question of law or fact.

Montgomery's motion is timely. The case started to involve Montgomery only in late April of 2015. Montgomery filed his motion within two weeks. Montgomery also complied with FRCP Rule 24(c) by providing notice and a proposed pleading.

### 3) Motion for Disqualification of Judge Snow

Montgomery has a substantial likelihood of prevailing on his motion for

recusal, as does Arpaio and Sheridan in their related petition for writ of mandamus also requesting recusal. Montgomery filed his affidavit under 28 U.S.C. § 144 on May 7, 2015 (Docket No. 1067), and in that pleading also further claimed essentially the same additional grounds requiring recusal of Judge Snow under 28 U.S.C. § 455 as raised by Arpaio and Sheridan.

Accordingly, Montgomery joins in and agrees with the petition by Arpaio and Sheridan in their arguments for recusal of Judge Snow, and incorporates their petition by reference herein for the purposes of this motion for a stay.

Montgomery is in agreement with the Defendants Arpaio and Sheridan, but adds an additional demand for recusal under 28 U.S.C. § 144 and also moves this Court to vacate Judge Snow's orders issued while a conflict of interest exists, particularly as they relate to Dennis Montgomery.

The demands for recusal are timely. Most of the circumstances requiring recusal were created by Judge Snow himself starting only on April 23, 2015.

The courts strive to eliminate even the appearance of bias. "Thus even if there is no bias in fact, an appearance of bias or prejudice requires recusal if it is sufficient to raise a question in the mind of 'the average citizen' about a judge's impartiality." *York v. United States,* 785 A.2d 651, 655 (D.C. 2001).

Judge Snow decided to make himself, his wife, and Montgomery major topics. Arpaio's lawyers filed an objection to procedures and on the last page also

to Judge Snow "questioning Defendant Arpaio on areas on which he did not receive prior notice." (Docket No. 1032, April 28, 2015.) Judge Snow then ruled that his questioning about the "Grissom Investigation" (Judge Snow's wife) and the "Seattle operation" (Dennis Montgomery) will _not_ be excluded. (Docket No. 1046, May 4, 2015.) Judge Snow injected personal issues into the case on April 23 and April 24, 2015. *See,* Motion for Recusal or Disqualification of District Court Judge G. Murray Snow, May 22, 2015, Pages 8-9. (Docket No. 1117).

Montgomery filed an affidavit and certificate under 28 U.S.C. § 144

> "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists…."

Montgomery's affidavit on May 7, 2015 (Docket No. 1067) compelled Judge Snow to "proceed no further" in the case" and requires "another judge shall be assigned to hear such proceeding," without subjective analysis or discretion.

A judge's impartiality "might reasonably be questioned" by the public where the judge's wife volunteers that the judge hates the defendant and will do anything to hound him from office (Docket No. 1117) – and neither the judge nor his wife have denied it, sought to explain the admission, nor apologized.

12

Karen Grissom, her husband Dale, and their son Scott encountered Judge Snow's wife, Cheri Snow, in a Someburros restaurant in Tempe, Arizona. Cheri Snow and Karen Morris (now Grissom) had known each other from childhood and caught up on news. Dale and Scott report passively listening. Cheri Snow boasted that her husband was presiding over the trial of Sheriff Joe Arpaio, that Judge Snow hated Arpaio and will do whatever it takes to get Arpaio out of office. An investigator confirmed that Judge Snow's wife was in the restaurant on that day and time. *See, Transcripts* of interviews with Karen Grissom, Dale Grissom, and Scott Grissom, attached to the motion for recusal of Arpaio and Montgomery.

Neither Judge Snow nor his wife have denied that Cheri Snow volunteered that Judge Snow hates Arpaio and will do anything to get him out of office, denied that Judge Snow in fact hates Arpaio or denied that Judge Snow is using the litigation to embarrass Arpaio in his re-election to remove him from office. Judge Snow invited the U.S. Attorney to send a prosecutor to monitor this civil case.

The Grissoms have never wavered in their account. The Grissoms are by their own report and from the investigation non-political, uninterested witnesses who have never had any relationship with or support for Sheriff Joe Arpaio. Karen Grissom's recollection in the transcript is the most detailed and specific because, as Dale Grissom and Scott Grissom report in the transcript, the women were primarily

13

talking to each other catching up on their lives since their childhood acquaintance. *See, Interview Transcripts, id.*

Judge Snow has "personal knowledge of disputed evidentiary facts concerning the proceeding." Judge Snow will have or already does have a private explanation from his own wife of these disputed facts and events.

Judge Snow has made clear that he insists on pursuing the Karen Grissom / Cheri Snow and the Montgomery investigation as proving some allegations (not yet identified) against the Defendants in the case below. Judge Snow over-ruled the Defendants' objections to exclude the topics. (Docket No. 1046.)

Therefore, any defense attorney must call Judge Snow and Judge Snow's wife as witnesses in order to present a thorough defense to whatever charges Judge Snow plans to bring. Judge Snow is likely to preside over the testimony and cross-examination of his own wife, (Docket No. 1117), who will be testifying about him.

Judge Snow simultaneously refuses to exclude the topics, yet claims that his wife would not offer admissible testimony. These are inextricably linked. Judge Snow's insistence, over objection, that the proceedings below must include the investigation into what his wife said about Judge Snow being biased necessarily causes his wife's testimony to become relevant. Without Cheri Snow's testimony, charges or allegations against the Defendants for investigating Karen Grissom's tip about what Cheri Snow said could not be sustained as relevant issues in the case.

14

## C. MONTGOMERY WILL BE IRREPARABLY HARMED ABSENT A STAY

A stay is required because Montgomery is being harmed in ways that cannot be adequately remedied.  A stay is required because if this Court determines that Judge Snow should recuse himself, any and all orders or proceedings will likely have to be vacated, as Judge Snow admitted on July 20, 2015 --

> However, I am wondering if the County has been fully advised that one of the positions Mr. Popolizio and Mr. Masterson is taking is that ***if in fact this Court is removed by the Ninth Circuit from presiding over this case, the supplemental permanent injunction and the findings of fact and conclusions of law I made three years ago should be vacated, in which case there would be no injunctive relief on which the County or the plaintiffs could rely.***
>
> * * * So I wonder if the County has been fully advised, if the plaintiffs in United States versus Arpaio have been fully advised, that ***the movants are taking the position not only that*** I should be removed from presiding over the contempt hearing, ***but that the injunctive relief and the findings of fact and conclusions of law I entered years ago should be vacated.***

Transcript, July 20, 2015, Status Conference, *Melendres v. Arpaio,* Pages 62-64 *(emphases added)*.

## D. PLAINTIFFS WILL NOT BE HARMED BY A STAY

It cannot be overlooked that this case was concluded on October 2, 2013 (Docs. No. 606, 670) – 21 months ago. Plaintiffs' attorneys suggest that they have to wait for relief, but legally, they have already obtained a final judgment.

These are post-judgment proceedings that concern implementation only. (See, Order, January 16, 2014, Page 2, Doc. No. 856). The only legitimate issue remaining is whether MCSO disobeyed the injunction on purpose or was merely slow in implementation in a Sheriff's office that serves 4 million Arizona residents.

However, the Plaintiffs will not receive implementation of the injunction any faster or slower either way. Regardless of any stay, MCSO and Arpaio are facing sufficient motivation to implement the injunction as quickly as possible. MCSO still knows that it must comply with the permanent injunction and any delay can and will be used against them when the stay is lifted.

## E. THE PUBLIC INTEREST FAVORS A STAY

This case is ostensibly about upholding the constitutional rights of the Plaintiffs and those similarly-situated. Yet the District Court is violating the constitutional rights of Montgomery. It is in the public interest that the federal courts respect all the constitutional rights of all persons.

Plaintiffs purport to represent the community. The analysis is the same as in (D) above. A stay will not change that. A possible decision as to state of mind will not change that.

16

However, the public interest is also served by improving the reputation of the federal judiciary in the eyes of the public.

## VII.  CONCLUSION AND REQUEST FOR RELIEF

This Court should order a stay of the proceedings and, at at minimum, vacate or order held in abeyance the implementation of Judge Snow's orders as relate to Montgomery until the appeal is heard.

EXPEDITED ORAL ARGUMENT IS REQUESTED.

Dated:  August 10, 2015                     Respectfully submitted,

  /s/ *Larry Klayman*        
Larry Klayman, Esq.
General Counsel
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Avenue NW, Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Email: leklayman@gmail.com

Jonathon Moseley
Virginia State Bar No. 41058
Freedom Watch, Inc.
2020 Pennsylvania Avenue N.W., Suite 345
Washington, D.C. 20006
(310) 595-0800
leklayman@gmail.com
Attorney for Plaintiff
Of Counsel

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this petition complies with the page limitations of Fed. R. App.

27(d), and that this motion complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because it has been prepared in a proportionally spaced typeface using Microsoft

Word in 14-point Times New Roman style.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2015, I electronically filed and served by email the foregoing document with the Clerk of the Court and the parties' counsel by using the CM/ECF system, I hereby certify that I have served the following in the manner indicated:

Honorable G. Murray Snow
United States District Courthouse
Sandra Day O'Connor U.S. Courthouse, Suite 322
401 West Washington Street, SPC 75
Phoenix, AZ 85003-2160


Stanley Young, Esq.
Andrew Carl Byrnes, Esq.
333 Twin Dolphin Road
Redwood Shores, CA 94065
syoung@cov.com
650-632-4700
Attorneys for Plaintiffs


Daniel Pochoda, Esq.
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235

18

Phoenix, AZ 85014
dpochoda@acluaz.org
602-650-1854
Attorney for Plaintiffs

Cecilia D. Wang
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
cwang@aclu.org
415-343-0775
Attorney for Plaintiff Melendres

Thomas P. Liddy, Esq.
CIVIL SERVICES DIVISION
MARICOPA COUNTY ATTORNEY'S OFFICE
222 North Central Avenue, Suite 1100
Phoenix, AZ 85005
liddyt@mcao.maricopa.gov
602-506-8541
Attorney for Defendant Joseph Arpaio and Maricopa County Sheriff's Office

Michele M. Iafrate, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
miafrate@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County Sheriff's Office

Deborah L. Garner, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
dgarner@iafratelaw.com
602-234-9775

19

Attorney for Defendant Joseph Arpaio and Maricopa County Sheriff's Office


Melvin McDonald
JONES SKELTON & HOCHULI, PLC
2901 N. Central Avenue, Suite 800
Phoenix, AZ 85012-2728
mmcdonald@jshfirm.com
602-263-1700
Attorney for Defendant Sheriff Joseph Arpaio


Andre Segura, Esq.
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Fl.
New York, NY 10004
asegura@aclu.org
212-549-2676
Attorney for Plaintiffs


Anne Lai
UCI School of Law
401 E. Peltason Drive. Suite 3500
Irvine, CA 92616
alai@law.uci.edu
949-824-9894


Jorge M. Castillo
MALDEF
634 S. Spring Street, 11th Fl.
Los Angeles, CA 90014
jcastillo@maldef.org
213-629-2512
Attorney for Plaintiffs


Richard K. Walker

WALKER & PESKIND, PLLC
16100 N. 71st Street, Suite 140
Scottsdale, AZ 85254-2236
rkw@azlawpartner.com
480-483-6336
Attorney for Defendant Maricopa County

/s/ *Larry Klayman*
Larry Klayman, Esq.
General Counsel
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Avenue N.W., Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Email: leklayman@gmail.com