CASE NO. 15-16440

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

MANUEL de JESUS ORTEGA MELENDRES, *et al.*, Plaintiffs

v.

JOSEPH M.  ARPAIO, Sheriff of Maricopa County,
Arizona; *et al.*, Defendants

and

DENNIS L.  MONTGOMERY, Putative Intervenor

---

From the United States District Court
For the District of Arizona
The Honorable G.  Murray Snow, Presiding
Case No. CV-07-2513

---

## <u>OPENING BRIEF OF APPELLANT ON APPEAL</u>
ORAL ARGUMENT REQUESTED

---

Larry Klayman, Esq.
FREEDOM WATCH, INC.
2020 Pennsylvania Ave.  NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

Attorney for Putative Intervenor Dennis L.  Montgomery

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ..................................................... iv

CERTIFICATE AS TO NAMED PARTIES AND INTERESTED PARTIES .... iv

CERTIFICATE AS TO RELATED CASES ........................................................ vi

TABLE OF AUTHORITIES ............................................................................ vii

GLOSSARY ....................................................................................................... x

ISSUES PRESENTED........................................................................................ 1

RULINGS UNDER REVIEW AND REVIEWABILITY ................................... 2

JURISDICTIONAL STATEMENT..................................................................... 2

    A. Statutory basis of subject matter jurisdiction of the District Court ........ 2

    B. Basis for claiming that the order appealed from is appealable ............... 3

    C. Statutory basis of jurisdiction of the U.S. Court of Appeals
       for the Ninth Circuit ................................................................................ 4

    D. Date of entry of the order appealed from ............................................... 4

    E. Date of filing of the notice of appeal ..................................................... 4

    F. Statute or rule under which it is claimed the appeal is timely ............... 4

STATEMENT OF THE CASE............................................................................ 4

STATEMENT OF FACTS RELEVANT TO THE APPEAL ............................. 6

    A. Appellant Montgomery Seeks to Protect Property Rights .................... 6

    B. Motion to Intervene and *Pro Hac Vice* Application Denied ................. 10

    C. Judge Snow Scape-Goating Montgomery is Irrelevant and Abusive ... 11

    D. Judge Snow's Conflicts of Interest Mandate Recusal ......................... 12

SUMMARY OF ARGUMENT......................................................................... 15

STANDARD OF REVIEW............................................................................... 16

ARGUMENT .................................................................................................... 17

    A. DISTRICT COURT ERRED DENYING MONTGOMERY'S MOTION
       TO INTERVENE ................................................................................. 17

B. STANDING OF MONTGOMERY TO INTERVENE
AS OF RIGHT ................................................................ 19

C. DISTRICT COURT ERRED DENYING MOTION OF
MONTGOMERY'S ATTORNEY TO BE ADMITTED
*PRO HAC VICE* TO CASE ............................................... 19

D. THE TWO LAWSUITS ARE NOT RELATED, AND
THEREFORE THERE IS NO CONFLICT OF INTEREST .............. 22

E. DISTRICT COURT ERRED DENYING MONTGOMERY'S MOTION
FOR RECUSAL ............................................................... 24

CONCLUSION AND REQUEST FOR RELIEF .............................................. 30

CERTIFICATE OF COMPLIANCE ................................................................. 30

CERTIFICATE OF SERVICE ........................................................................ 30

## CORPORATE DISCLOSURE STATEMENT

The Appellant is a natural person and is not an officer, director, or majority shareholder of any publicly traded corporation.

## CERTIFICATE AS TO NAMED PARTIES AND INTERESTED PARTIES

Plaintiff-Appellant certifies pursuant to Circuit Rule 28-2.1 that:

### A. Parties -- Plaintiffs

The Plaintiffs identified on the District Court's court record on PACER:

1) Manuel de Jesus Ortega Melendres on behalf of himself and all others similarly situated
2) Velia Meraz on behalf of herself and all others similarly situated
3) Manuel Nieto, Jr. on behalf of himself and all others similarly situated
4) David Rodriguez on behalf of himself and all others similarly situated
5) Jessica Quitugua Rodriguez on behalf of herself and all others similarly situated
6) Somos America
7) United States of America, Intervenor Plaintiff, previously Amicus Curiae

### B. Parties -- Defendants

The Plaintiffs sued in this action the following Defendants:

1) Joseph M. Arpaio, Sheriff of Maricopa County, Arizona
2) Maricopa County Sheriff's Office ("MCSO"), Arizona
3) Maricopa County, Arizona
4) Sgt. Brett Palmer, MCSO

### C. Interested Parties Participating

The Court has entered into the litigation the following interested parties, who are neither Plaintiffs nor Defendants:

1) State of Arizona
2) Maricopa County Administration
3) Gary L Birnbaum
4) Timothy J Casey
5) John M Girvin
6) Tom Liddy
7) John MacIntyre
8) Brian Mackiewicz
9) Barry Mitchell
10)    Raul Martinez
11)    David Ouimette
12)    Brett Palmer
13)    Brian Sands
14)    Douglas Schwab
15)    Gerard Sheridan
16)    Joseph Sousa
17)    Lee Stein
18)    Ann Uglietta
19)    Robert Warshaw

## D.  Amicus Curiae

The United States of America had been participating as Amicus Curiae.

v

## CERTIFICATE AS TO RELATED CASES

In a related petition, Sheriff Joe Arpaio ("Arpaio") and Chief Deputy Gerard Sheridan ("Sheridan") (especially appearing) of Arizona's Maricopa County Sheriff's Office ("MCSO") filed a petition on August 6, 2015, for writ of mandamus for recusal of the Honorable G. Murray Snow of the U.S. District Court for the District of Arizona ("District Court"). *See Joseph Arpaio and Gerard Sheridan v. U.S. District Court for the District of Arizona and Manuel de Jesus Ortega Melendres*, U.S. Court of Appeals for the Ninth Circuit, Case No. 15-72440. This Court apparently found that mandamus was the wrong legal means to seek review of the serious issue of the lower court's conflict of interest and other alleged unethical actions. Earlier, this Court had denied Appellant's petition for writ of mandamus on similar procedural grounds.

## TABLE OF AUTHORITIES

**Cases**

*Birt v. Montgomery*, 725 F.2d 587, 592 (11th Cir. 1983)......................................21

*Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 576 (D.C. 1967)......................................28

*California v. Block*, 690 F.2d 753, 776 (9th Cir.1982)...........................................4

*Chamness v. Bowen,* 722 F.3d 1110, 1115 (9th Cir. 2013) ....................................4

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011).....................................................................................................3

*Dennis Montgomery and the Montgomery Family Trust v. eTreppid Technologies, LLC, Warren Trepp and the U.S. Department of Defense*, Case Nos. 3:06-CV-00056-PMP-VPC and 3:06-CV-00145-PMP-VPC, Order, Judge Philip M. Pro, March 19,2007 ....................................................................................................9

**Dunton v. County of Suffolk*, 729 F.2d 903, 909 (2d Cir.1984), *amended* 748 F.2d 69 (2d Cir.1984) ........................................................................................ 22,24

*Garza v. County of Los Angeles*, 918 F.2d 763 (9th Cir. 1991) ...............................4

*Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1325 (9th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976)..........23

*Glasser v. U.S.*, 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942) ...........21

*In re Aetna Casualty & Surety Co.*, 919 F.2d 1136 (6th Cir. 1990) ........................29

*In re United States*, 158 F.3d 26, 30 (1st Cir. 1998)...............................................28

*In the Matter of the Search of: The Residence Located at 12720 Buckthorne Lane, Reno, Nevada, and Storage Units 136, 140, 141, 142 and 143, Double R Storage, 888 Madestro Drive, Reno, Nevada,* Case Nos. 3:06-CV-0263-PMP-VPC and 3:06-MJ-00023-VPC, Order, Magistrate Judge Valerie P. Cooke, November 28,

2006 ...............................................................................................................9

*Jackson v. Microsoft Corp.*, 135 F. Supp. 2d 38, 40 (D.D.C. 2001) .......................27

*Joseph Arpaio and Gerard Sheridan v. U.S. District Court for the District of Arizona and Manuel de Jesus Ortega Melendres*, Case No. 15-72440 .............. vi

*Leisnoi, Inc. v. U.S.*, 313 F.3d 1181, 1884 (9th Cir. 2002)....................................4

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) ...................28

*Liteky v. United States*, 510 U.S. 540, 555, 127 L. Ed. 2d 474, 114 S. Ct. 1147 (1994).........................................................................................................27

*Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980) ..............................................27

*Melendres v. Arpaio*, Record No. 13-16285, (9th Cir. April 15, 2015) ................12

*Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995) ...........................................28

*Nichols*, 841 F.2d at 1502 .......................................................................................21

*Panzardi-Alvarez v. U.S.*, 879 F.2d 975, 980 (1st Cir. 1989)................................21

*Republic of Pan. v. American Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000) ....28

*Rubin v. City of Santa Monica*, 308 F.3d 1008, 1013 (9th Cir. 2002).....................3

*SCA Servs. v. Morgan*, 557 F.2d 110 (7th Cir. 1977)...........................................28

*Scott v. United States,* 559 A.2d 745, 750 (D.C. 1989) ...........................................27

*Southwest Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 814 (9th Cir. 2001) ...................................................................................................................4

*\*Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810 (9th Cir. 2001). .............17

*Trone v. Smith*, 621 F.2d 994 (C.A.9 (Cal.), 1980) ...............................................24

*\*Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85 (C.A.9 (Mont.) 1983) .........................................................................................................24

*U.S. v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir.1982).....................................21

*U.S. v. Laura*, 607 F.2d 52, 56 (3d Cir.1979).......................................................21

*U.S. v. Lillie*, 989 F.2d 1054, 1056 (9th Cir. 1993) ..............................................21

*U.S. v. Nichols*, 841 F.2d 1485, 1502 (10th Cir.1988) ...........................................21

*U.S. v. Wisniewski*, 478 F.2d 274, 285 (2d Cir.1973)...........................................21

*U.S. v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989) ...................................................28

*U.S. v. Nelson,* 718 F .2d 315, 321 (9th Cir. 1983) ..................................................28

*Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972) .........................................27

*York v. United States,* 785 A.2d 651, 655 (D.C. 2001) ...........................................27

## Statutes

28 U.S.C. § 455(a) ...........................................................................................28

28 U.S.C. § 1367 ...............................................................................................3

28 U.S.C. § 455 ...............................................................................................29

28 U.S.C. § 1291 ............................................................................................3, 4

28 U.S.C. § 144 ...........................................................................................1, 25

28 U.S.C. §1331 .................................................................................................2

28 U.S.C. §1332 .................................................................................................2

U.S. Constitution .........................................................................................2, 27

## Rules

ABA Code Of Judicial Conduct Canon 2 .................................................................29

ABA Code Of Judicial Conduct Canon 3(C)(1).......................................................27

ABA Code Of Judicial Conduct Canon 3 .................................................................30

Circuit Rule 28-2.1.......................................................................................... iv

FRAP 4(a)(1)(A) ...............................................................................................4

FRCP 24 ..........................................................................................................17

FRCP 24(a) .................................................................................................1,15

FRCP 24(a)(2),..............................................................................................20

FRCP 24(c) ........................................................................................20

x

## **GLOSSARY**

"FRAP" refers to the Federal Rules of Appellate Procedure

"FRCP" refers to the Federal Rules of Civil Procedure

"MCSO" refers to the Maricopa County Sheriff's Office in Arizona

"Executive Branch" refers to the branch of the U.S. Government established under Article II of the Constitution, including the President and the Federal Departments and Agencies under the President's supervision

"ACLU" refers to one of the Plaintiffs' law firms, the American Civil Liberties Union

## I.   ISSUES PRESENTED

A. The trial judge erred in denying Appellant's motion to intervene as of right under the Federal Rules of Civil Procedure ("FRCP") Rule 24(a) to object to the deprivation of his property and legal rights and due process.

B. The trial judge erred in denying Appellant's motion for admission of his attorney, Jonathon Moseley, *pro hac vice* because the instant case is not "substantially related" to Sheriff Joe Arpaio's lawsuit against President Barack Obama's executive amnesty for illegal aliens. A conflict of interest can only arise from an attorney's representation in two or more cases if they are "substantially related" so that clients' interests are adverse in ways actually _relevant_. Parties having differences that have absolutely nothing to do with the proceedings or legal matters do not present a conflict of interest for legal representation.

C. The trial judge also erred in denying Appellant's motion for admission of Moseley *pro hac vice* by applying an erroneous rule of law – merely reciting that Moseley is involved in two different cases yet not conducting any analysis as to whether any actual conflict exists.

D. The trial judge erred in denying Appellant's motion for admission of his attorney *pro hac vice* because there is no "serious" conflict of interest under governing law.  Montgomery asserts his total irrelevance to the case below, he seeks to be left alone, and he merely demands the return of and due process for his property and legal rights.  Thus, Montgomery's interests are not adverse to Arpaio's interests in any way that qualifies as "serious."  Montgomery has no stake in or knowledge of how Arpaio's office conducts traffic stops, investigates violations of Arizona State law or immigration status, or evaluates probable cause.  Montgomery has no stake in whether Arpaio will or will not found be in contempt in this case.

E. The trial judge erred in not recusing himself due to the trial judge's personal conflict of interest.  The trial judge was compelled to immediately stop and refer the question of recusal to a different judge upon the filing of Appellant's affidavit under 28 U.S.C. § 144, without subjective discretion or analysis, after making his own wife a witness.

F. The trial judge erred in not recusing himself under 28 U.S.C. § 455 where

1

a reasonable member of the public would believe there is the appearance of a conflict of interest in Judge Snow conducting an investigation of statements made by his own wife, his wife announced that he hates Sheriff Arpaio and is using the case to destroy Arpaio and remove him from office, neither have denied this, and Judge Snow refuses to exclude the topic making his wife and himself a likely material witness. He ordered payment of $4 million to Covington & Burling, which represents plaintiffs in the underlying case, where his brother-in-law is a partner.

## II.   RULINGS UNDER REVIEW AND REVIEWABILITY

The Appellant appeals from the District Court's Orders of --

1. July 10, 2015 (Doc. # 1167) Denying Motion For Reconsideration. ER51-58.

2. May 14, 2015 (Doc. # 1093) denying *Pro Hac Vice* Admission of Jonathon Moseley Striking Putative Intervenor's Motion to Intervene and Striking Putative Intervenor's Motion to Disqualify.  ER59-62.

> **_NOTE_**:  The May 14, 2015, Order was **_without prejudice_**,[1] explicitly permitting Moseley to reapply.  Moseley then reapplied by the May 19, 2015, Motion for Reconsideration (Doc. # 1112).  ER433-476.  The final order runs for appeal from the July 10, 2015, Order denying that motion.

3. June 10, 2015 (Doc. # 1164) Denying Motion for Disqualification ER11-51.

All issues were preserved for appeal by the pleadings and are reviewable,

including in the Motion For Reconsideration ER433-476, denied July 10, 2014.

## III.   JURISDICTIONAL STATEMENT

### A.    Statutory Basis of Subject Matter Jurisdiction in District Court

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §

1331 as it is a controversy arising under federal law and the Constitution.

---

[1]     ER59-62; Transcript, May 14, 2015, 34:15-20, 39:17-19.  ER193, 198.

Moreover, the District Court also had jurisdiction over the issues and claims about which the Appellant sought to intervene as supplemental jurisdiction pursuant to 28 U.S.C. § 1367 ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."). The Appellant seeks to intervene concerning matters "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Specifically, the Appellant seeks to intervene concerning the presiding judge's orders in proceeding about enforcement of the main claims under federal law and the Constitution.

**B.     Basis for Claiming that the Order Appealed from is Appealable**

This appeal is from final orders as to the Plaintiff-Appellant which disposed of all his claims and terminated his involvement in the case in the District Court.[2] This Court has jurisdiction from the District Court's final order denying Montgomery's motion to intervene, demand under 28 U.S.C. § 144 for recusal of the trial judge, and admission of his previous attorney *pro hac vice* under 28 U.S.C. § 1291; *See, e.g., Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011) (this court has "jurisdiction over the denial of a motion to intervene as of right as a final appealable order . . ."); *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1013 (9th Cir. 2002); *Chamness v. Bowen,* 722 F.3d

---

[2]     Initial Order invited Moseley to reapply. ER59-62. The final order was July 10, 2015. ER51-58. Transcript, May 14, 2015, 34:15-20, 39:17-19. ER193, 198.

1110, 1115 (9th Cir. 2013). "We have jurisdiction over the district court's denial of Stratman's motion to intervene as of right, because it is a final appealable order. 28 U.S.C. § 1291; *Southwest Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 814 (9th Cir. 2001)." *Leisnoi, Inc. v. U.S*., 313 F.3d 1181, 1884 (9th Cir. 2002)*; Use v. Mont. Wilderness Ass'n*, 647 F.3d at 896. ("… *See California v. Block*, 690 F.2d 753, 776 (9th Cir.1982) (denial of motion to intervene is an appealable order)." *Garza v. County of Los Angeles*, 918 F.2d 763 (9th Cir. 1991).

## C. Statutory Basis of Jurisdiction of the U.S. Court of Appeals

This U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") has jurisdiction over this appeal from the District Court pursuant to 28 U.S.C. § 1291.

## D. Date of Entry of the Order Appealed From

a) Order of July 10, 2014 Denying Motion For Reconsideration

b) Order of May 14, 2015. *NOTE*:  Denial of Pro Hac Vice Admission was *without prejudice*, allowing Moseley to apply again. He did. Therefore, the actual denial was on July 10, 2014.

c) Order of June 10, 2015 Denying Motion for Disqualification

## E. Date of Filing of the Notice of Appeal.

Appellant filed his July 15, 2015, Notice of Appeal (Doc. # 1173). ER6-10.

## F. Statute or Rule Under Which it is Claimed the Appeal is Timely.

Federal Rules of Appellate Procedure ("FRAP") Rule 4(a)(1)(A) "the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days

after entry of the judgment or order appealed from."

## IV.   STATEMENT OF THE CASE

This case should have absolutely nothing to do with Dennis L. Montgomery. Prior to April 23, 2015, Montgomery had never been involved in or mentioned in this litigation.  He has never been named or served as a party, witness, or played in any other role.  Montgomery has no expertise in, knowledge of, or involvement in illegal immigration, immigration enforcement, border security, law enforcement issues, the proper way to conduct traffic stops, or when there is probable cause.

This case was filed December 12, 2007, alleging that Plaintiff Manuel Melendres was detained in a traffic stop because of his Hispanic ancestry under suspicion of illegal immigration status. The case concerned when the Maricopa County Sheriff's Office ("MCSO") – regardless of who is its Sheriff – has authority to detain persons either on suspicion of violating Arizona State law and/or to investigate their immigration status, and whether traffic stops and enforcement were targeted based on race.  But when the case was filed, MCSO had authority to enforce the nation's immigration laws under the so-called 287(g) program.  During the lawsuit, in 2009, the Department of Homeland Security terminated its 287(g) agreement with MCSO.  As a result, the case below wrestled with under what circumstances of probable cause MCSO may detain persons.

None of this has the remotest relevance to Dennis Montgomery.  The case

*ended* on October 2, 2013, by a final order labeled as "Supplemental Permanent Injunction/Judgment Order." (Docs. # 606, 670.) Now, the case is in post-judgment proceedings of contempt. On May 8, 2014, MCSO's Deputy Ramon Armendariz killed himself. The Plaintiffs allege that the traffic stop videos found in his house revealed that the injunction was not being fully implemented.[3]

But, suddenly, on April 23, 2015, Judge Snow *sua sponte* started attacking Montgomery *in absentia* by asking Sheriff Arpaio about the conspiracy theories of a local pro-illegal immigrant rag, *The Phoenix New Times.*[4] Montgomery learned about these events only *after the fact* from a news article published April 30. 2015.

Evidentiary hearings started on April 21-24, 2015. Hearings reconvened September 22 through 25, and September 29 through October 5, 2015.[5] In every hearing since April, Judge Snow has repeatedly made Montgomery an issue.

## V.   STATEMENT OF FACTS RELEVANT TO THE APPEAL

### A.   Appellant Montgomery Seeks to Protect Property Rights

Montgomery seeks to intervene to protect his interests, receive due process, and be heard. Montgomery has been denied his rights of due process guaranteed by the Constitution to notice and an opportunity to be heard.[6] His personal

---

[3]   Transcript, April 24, 2015, 955-958.
[4]   *Id.*
[5]   Minute Order, July 20, 2015 (Doc. # 1179).
[6]   Motion for Reconsideration, May 19, 2015, 3-4 (Doc. # 1112); ER435-436; Transcript, July 20, 2015, pages 42:10 – 46:15; ER791-795; Transcript July 24,

property, trade secrets, work product, proprietary information, intellectual

property, medical records protected by the Health Insurance Portability and

Accountability Act, and data were seized in violation of his rights, contracts, and

privileges, and then re-distributed promiscuously to adverse attorneys and parties.

Montgomery is a complaining witness and whistleblower seeking to expose

illegal activity in the government by unconstitutional surveillance of U.S. citizens

more extensive and intrusive than the activities revealed by Edward Snowden.[7]

Montgomery sought help from MCSO. Montgomery states that the government

"harvested" private data – far more extensive than telephonic metadata – of

millions of people, including judges, politicians, and public officials, including

Supreme Court Justice John Roberts.[8] Then, the MCSO "Cold Case Posse" asked

Montgomery to analyze President Barack Obama's birth certificate released in

computer form for signs of forgery or digital alteration. During this period,

Montgomery suffered a massive stroke and was for a few minutes clinically dead

on the neurosurgeon's operating table. That slowed the completion of his work.

---

2015, especially 9:27 - 10:20; 14:5 - 16:3; 18:11 - 20:15; 21:6 - 22:20; ER233-242.

[7] Affidavit of Dennis Montgomery (Doc. # 1067-2), ER597, Exhibit 2 attached to Intervenor Dennis L. Montgomery's Motion to Disqualify Judge G. Murray Snow Under 28 U.S.C. § 144 Motion for Recusal, May 7, 2015 (Doc. # 1067); Transcript, April 24, 2015, 959; ER161.

[8] Plaintiff's Motion for In Chambers and Ex Parte Interview of Witness Dennis Montgomery, U.S. District Court for the District of Columbia, Case No. 1:13-cv-00851, March 20, 210, (Doc. # 129); ER650 Bob Unruh, "2 Supreme Court Justices targeted by US Spies," World Net Daily, April 30, 2015, Accessible at http://www.wnd.com/2015/04/u-s-gathering-dirt-on-supreme-court-justices/

However, Montgomery entrusted MCSO with his documents, property, and items under contractual obligations and an agreement that Montgomery retains ownership of all of them and that these items will be preserved as confidential.

Yet Judge Snow ordered "all" documents and items relating to Montgomery indiscriminately seized [9] and re-distributed.[10] Judge Snow stated in open court Montgomery's items might very well be entirely irrelevant to this case.[11]

As one example, on July 20, 2015, Judge Snow granted a civil motion by the then non-party U.S. Department of Justice ("DoJ") for DoJ to obtain[12] from the District Court Montgomery's documents, intellectual property, and personal property previously seized by Judge Snow from MCSO.[13]

These are mostly the same documents, data, and things that the U.S. District Court for the District of Nevada had already ordered DoJ to return to Montgomery once before. The U.S. District Court for the District of Nevada ("Nevada District") already ruled that (1) the data, documents, intellectual property, tangible objects, and personal property at issue in this case belong to Montgomery, (2) the

---

[9]     Transcript, April 23, 2015, pages 656-660; ER695-699; Transcript, July 24, 2015; ER824;  Order, May 4, 2015; ER120.

[10]    Order, September 8, 2015, (Doc. # 1312); ER1; Transcript, July 20, 2015, pages 42:10 – 46:15; ER791-795; Transcript, July 24, 2015, 23:4-24:5 (Montgomery documents available to counsel); ER838-839.

[11]    Transcript, July 24, 2015, pages 14:5-23:24; ER831-838.

[12]    *Id.*

[13]    Transcript, July 20, 2015, pages 42-53, ER791-802; primarily Page 53; ER802 *(emphases added);* Order, July 24, 2015. (Doc. # 1190.)  ER5.

government did not address whether the information was classified adequately to support that claim, (3) the U.S. Government was required to return it all to Montgomery, and (4) the U.S. Government had deceived that court.[14]

In the Nevada District, Judge Philip M. Pro upheld the order of the Magistrate Judge on March 19, 2007,[15] finding no error. Magistrate Judge Valerie P. Cooke, issued a detailed order November 28, 2006, [16] in relation to the U.S. Government's search warrant and illegal search and seizure of Montgomery's records, information, and property. Magistrate Judge Cooke ordered the Government to return to Montgomery the items that had been taken. Magistrate Judge Cooke found that the affidavit used to justify the search warrant was false and misleading and condemned the U.S. Court's "callous disregard" for Montgomery's rights. Magistrate Judge Cooke explained the problem on pages 30:25 – 31:3 of her November 28, 2006, Order:

SA West blindly relied on the documents, sworn statements, and

---

[14]    *Dennis Montgomery and the Montgomery Family Trust v. eTreppid Technologies, LLC, Warren Trepp and the U.S. Department of Defense*, Case Nos. 3:06-CV-00056-PMP-VPC and  3:06-CV-00145-PMP-VPC, Order, Judge Philip M. Pro, March 19,2007, and *In the Matter of the Search of:  The Residence Located at 12720 Buckthorne Lane, Reno, Nevada, and Storage Units 136, 140, 141, 142 and 143, Double R Storage, 888 Madestro Drive, Reno, Nevada,* Case Nos. 3:06-CV-0263-PMP-VPC and 3:06-MJ-00023-VPC, Order, Magistrate Judge Valerie P. Cooke, November 28, 2006 (referred to as "Nevada Orders").
[15]    Exhibit 1, attached to Intervenor Dennis L. Montgomery's Notice of Supplemental Authority and Supplemental Memorandum of Law in Support of Motion for Intervention of Right, May 13, 2015.  (Doc. # 1081.) ER487.
[16]    *Id.,* Exhibit 2, attached thereto.  ER505.

evidence supplied by eTreppid, and he never appeared to question whether he had become an agent, not for the Government, but for private interests engaged in litigation valued in millions of dollars. The litigation that has ensued based upon the seizure of Montgomery's property is a cautionary tale to heed the admonition that trade secrets litigation is best left to the civil forum.

And Magistrate Judge Cooke further concluded on page 29:20 – 30:2 of her

Order:

The over-arching concern in this proceeding is that SA West became an unwitting pawn in a civil dispute, and as a result of his inexperience and lack of training, he prepared search warrant affidavits that are riddled with incorrect statements, edited documents, and uncorroborated conclusions, which caused this court to exercise its formidable power to authorize the government to search Montgomery's home and storage units.

Magistrate Judge Cooke noted in *dicta* that the Government did not pursue

whether Montgomery's records and documents are classified. *Id.*, page 13:24 –

14:4.

## B. Motion to Intervene and Pro Hac Vice Application Denied

Judge Snow denied Montgomery's motions seeking to receive due process,

notice, and an opportunity to be heard guaranteed by the Fifth Amendment to the

Constitution concerning his property and the due process clause of the Fourteenth

Amendment to the Constitution.[17] Significantly, no party filed any pleading

opposing Montgomery's intervention or the admission of his attorney *pro hac vice*.

As a result, no specific arguments, evidence, or grounds were identified or

---

[17]     Order on Motion to Intervene, May 14, 2015, Page 2 (Doc. # 1093). ER59.

developed in the record below to establish or clarify any grounds.

Judge Snow denied Moseley's admission *pro hac vice* by vaguely hinting that "*apparently*" a conflict of interest *might* exist, merely because Moseley is counsel in two lawsuits, without analyzing them.[18]  Montgomery argued in his Motion for Reconsideration that no interest of any client was in conflict. [19]

### C.  Judge Snow's Scape-Goating Montgomery is Irrelevant

Montgomery is simply irrelevant to whether MCSO implemented the 2013 injunction slowly or quickly.  That irrelevance renders any conflict of interest insubstantial, insignificant, and not the "serious" conflict needed to trigger governing law.  MCSO is apparently the largest Sheriff's offices in the nation, serving 4 million Maricopa County residents.  That sheer size might explain slow implementation – but *Montgomery cannot explain these events*.  Paradoxically, the Appellant is forced to step in to defend his interests, but preferring to be left alone.

Actually, Judge Snow is in contempt of this Court by reviewing whether MCSO should have spent time dealing with Montgomery.  This Court already admonished Judge Snow to stop micro-managing MCSO's administration or investigating the effectiveness of Sheriff Arpaio's management by enlarging the October 2, 2013, final order.  Judge Snow, in contempt of this Court, ruled that his

---

[18]      *Id.*

[19]      Motion for Reconsideration of Motion for Admittance Pro Hac Vice of Jonathon A. Moseley and Memorandum of Law in Support Thereof, May 19, 2015, Pages 2-3 (Doc. # 1112). ER433.

Monitors would not be "shackled" [20] by Defendants' constitutional rights. [21] This

Court of Appeals previously vacated Judge Snow's use of Monitors for matters,

such as management quality, that have

> no bearing on the constitutional rights at stake here. We therefore
> vacate these particular provisions and order the district court to
> tailor them so as to address only the constitutional violations at
> issue. *See Milliken*, 433 U.S. at 282.

*Melendres v. Arpaio*, Record No. 13-16285, U.S. Court of Appeals for the Ninth
Circuit, Opinion, April 15, 2015, page 23.

But Judge Snow ordered those same Monitors to investigate whether MCSO

spent its resources well by working with Montgomery as a complaining witness. [22]

This is what the Ninth Circuit admonished Judge Snow to *stop* investigating, areas

that have "**no bearing on the constitutional rights at stake here.**" *Id.*

### D.    Judge Snow's Conflicts of Interest Mandate Recusal

Judge Snow also injected personal issues into the case on April 23 and 24,

---

[20]    Transcript, May 14, 2015, at 49:15-21, 51, 56. ER748.

[21]    Order, May 4, 2015, page 3, ("The questions posed by the Court, and later
by defense counsel, relate to the efficacy and integrity of MCSO's internal
investigative processes, the agency's approach to addressing conflicts of interest,
and the relative resistance of MCSO's command staff to the authority of the federal
court.") (Doc. # 1046.); ER120; Transcript, April 23, 2015, 651:1-653:5, 657:15-
660:8 (Judge Snow demands to know about funding decisions for MCSO law
enforcement activities); ER690-692, 696-699; Defendant Joseph M. Arpaio and
Maricopa County Sheriff's Office Objection to Court-Ordered Disclosure
Procedure, April 28, 2015  (Doc. # 1035).  ER623.

[22]    Transcript, July 20, 2015, page 46; ER795; Transcript July 24, 2015,
especially 9:27 - 10:20; 14:5 - 16:3; 18:11 - 20:15; 21:6 - 22:20; ER233-242;
Order, April 27, 2015, (Doc. # 1033); ER123.

2015.[23]  Abruptly, on April 23, 2015, Judge Snow made himself and his wife major

topics in the litigation.  Sheriff Arpaio's lawyers then filed an objection to

procedures and on the last page to Judge Snow "**questioning Defendant Arpaio**

**on areas on which he did not receive prior notice.**"[24]  Judge Snow ruled that his

own questioning about the "Grissom Investigation" (Judge Snow's wife) and the

"Seattle operation" (Dennis Montgomery) will _not_ be excluded from the case.[25]

Over objection, Judge Snow insists upon making his own family issues in the case.

Sheriff Arpaio asked Judge Snow to exclude the topic.  Judge Snow refused and

insisted upon making his wife and Montgomery parts of this case.

Karen Morris Grissom, her husband Dale, and their son Scott met Judge

Snow's wife in a Someburros restaurant in Tempe, Arizona.  Cheri Snow and

Karen Grissom knew each other from childhood. Cheri Snow boasted that her

husband was presiding over the trial of Sheriff Arpaio, that Judge Snow hated

Arpaio, and he will do whatever it takes to get Arpaio out of office.[26] A year later,

Karen Grissom saw news reports about this case, and sent a tip to Sheriff Arpaio

---

[23]    Intervenor Dennis L. Montgomery's Motion to Disqualify Judge Snow
Under 28 U.S.C. § 144 Motion for Recusal, May 7, 2015, pages 4-9. (Doc. #
1067).  ER560-565.
[24]    Defendant Joseph M. Arpaio and Maricopa County Sheriff's Office
Objection to Court-Ordered Disclosure Procedure, April 28, 2015 (Doc. # 1035).
ER623.
[25]    Order, May 4, 2015, Pages 2-3 (Doc. # 1046)  ER121-122.
[26]    "Interview Transcripts," attached as Exhibits 6 (ER304) and Exhibit 7
(ER335) to Motion for Recusal or Disqualification of District Court Judge G.
Murray Snow, filed by Sheriff Joe Arpaio, May 22, 2015 (Doc. # 1117).  ER246.

over Facebook.[27] Sheriff Arpaio gave the tip to his attorney, Tim Casey, who delegated it to a private investigator,[28] Don Vogel – whose credibility the Plaintiffs are depending upon to malign Defendants on another issue. (Doc. # 1052.)

Neither Judge Snow nor his wife have ever denied that she announced that Judge Snow hates Arpaio, that Judge Snow actually hates Arpaio or that he is using the litigation to get Arpaio removed from office.[29]

Rather than publicly disclosing these concerns, Sheriff Arpaio's attorney Tim Casey, was apparently afraid to challenge Judge Snow.[30] Several years passed until *The Phoenix New Times* printed its conspiracy theories. Then Judge Snow asked Sheriff Arpaio about the news articles in court on April 23, 2015. Judge Snow created a conflict of interest by not only injecting his own family into the case but also refusing to correct his mistake when urged to.

It is highly likely that Judge Snow's wife will be material witnesses:

---

[27]     Facebook message, attached as Exhibit 5 to Motion for Recusal or Disqualification of District Court Judge G. Murray Snow, May 22, 2015 (Doc. # 1117-5); Transcript, April 24, 2015, 960:21 – 967:23.

[28]     Transcript, April 23, 2015, 648:8-651:4; Exhibit attached to Order, May 7, 2015 (Doc. # 1053). ER 96.

[29]     Declaration of Sheriff Joe Arpaio, Page 8, Exhibit 2 to Motion for Recusal or Disqualification of District Court Judge G. Murray Snow, May 22, 2015 (Doc. # 1117-2). ER266, 273.

[30]     *Id.* at Page 7 ( "Nevertheless, testimony that Judge Snow elicited demonstrated that MCSO decided to go no further than just to verify that Mrs. Snow had made such statements."); ER272; Letter from Timothy E. Casey, Esq., Exhibit attached to Order, May 21, 2015 (Doc. # 1115); ER62; Transcript, April 24, 2015, 967; ER169.

25.   The fact that Judge Snow believes that the Grissom investigation is relevant to the contempt proceeding establishes his spouse as a material witness. Undoubtedly, Mrs. Snow is now a material witness in this proceeding because of Judge Snow's injection of her and her statements in the contempt proceedings.[31]

Faced with defending a client against some allegation or charge, defense counsel would have a professional duty in zealously defending their clients to call Cheri Snow as a witness. The rules requiring recusal do not require an absolute certainty; only that testimony by the judge's family member is reasonably likely.

Also, Judge Snow's brother in law is a partner in the law firm representing the Plaintiffs, Covington & Burling.  Judge Snow considered this earlier (Doc. # 541).  But, now, much more recently than that previous review, Judge Snow later ordered taxpayers to pay over $4 million to Covington & Burling.[32]  This reasonably creates a significant appearance of bias at a minimum in the view of the public.

## VI.   <u>SUMMARY OF ARGUMENT</u>

The Appellant, Dennis Montgomery, is entitled to intervene "as of right" pursuant to FRCP 24(a) to assert his rights of due process and to protect against seizure and the distribution to others of his intellectual property, proprietary

---

[31]   Declaration of Sheriff Joe Arpaio, Page 7-8, Exhibit 2 to Motion for Recusal or Disqualification of District Court Judge G. Murray Snow, May 22, 2015  (Doc. # 1117-2);  ER266, 272-273.

[32]   *Arpaio , et al. v. U.S. District Court for the District of Arizona, et. al.*, Ninth Circuit, Case No. 15-72440, Page 28 (petition for writ of mandamus for recusal.)

15

information, technology, commercial work product, intangible property including data, and personal property.  A federal court in this Circuit has decided that the property belongs to Montgomery and ordered the government to return the property and items back to Montgomery once before.  *See, Nevada Orders, supra.*

Meanwhile, the Appellant is entitled to his choice of legal counsel, particularly where, as here, the Appellant is involved in other legal matters and cases which must be coordinated conceptually and legally with the issues in this case, he acted very quickly to assert his rights in this case, and the highly controversial and high profile nature of this case makes it nearly impossible for the Appellant to find a local attorney willing to risk involvement.  Moreover, the Appellant is in ill health, suffering from multiple strokes as a result of a brain aneurism, and is indigent as a result of a campaign of defamation to silence him as a whistleblower exposing government misconduct. Montgomery could not afford to hire a local Arizona attorney rather than a public interest law firm.

A trial judge may not capriciously or arbitrarily deny an attorney's motion to appear for a client *pro hac vice* where the standards have been satisfied.  While he may review an application, he may not use subjective discretion to deny it.

Here, Judge Snow's decision was based upon significant errors of law. Judge Snow merely recited that Montgomery's chosen attorney, Jonathon Moseley, also represents Sheriff Joe Arpaio (working under Larry Klayman) in an unrelated

16

matter. There, Larry Klayman as General Counsel of Freedom Watch brought a constitutional challenge to President Barack Obama's amnesty for illegal aliens by executive action, in which Moseley is a supporting lawyer. However, as errors of law, Judge Snow failed to (1) identify any actual conflict of interest, (2) analyze whether the cases are "substantially related" or (3) apply the legal test of whether an asserted conflict is "serious."

Finally, Judge Snow made his own wife a likely material witness in the case. Sheriff Arpaio and MCSO objected. Judge Snow insists upon making his wife's conversation with Karen Grissom an issue in this case, in which Cheri Snow announced that Judge Snow hates Sheriff Arpaio and is manipulating this litigation to get Sheriff Arpaio out of office. Neither Judge Snow nor Cheri Snow deny this. Thus, Judge Snow's own ruling categorizes the issue as material and makes his wife a reasonably likely witness. Judge Snow must recuse himself.

## VII. <u>STANDARD OF REVIEW</u>

This Court reviews a motion to intervene *de novo*, with the exception of the timeliness prong, which we review for abuse of discretion. *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 814, 817 (9th Cir. 2001).

This Court reviews the denial of a motion for admission of an out-of-state attorney *pro hac vice* for abuse of discretion, but reviews the questions of law upon which the denial is asserted to be based *de novo*. Here, the denial was asserted on

the basis of legal grounds which are erroneous, which are reviewed *de novo*.

FRCP 24 governs intervention by additional parties in existing litigation in

the federal courts:

> Rule 24.  Intervention
>
> (a) INTERVENTION OF RIGHT.  On timely motion, the court must permit anyone to intervene who:
> * * *
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) PERMISSIVE INTERVENTION.
> (1) *In General.*  On timely motion, the court may permit anyone to intervene who:
> * * *
> (B) has a claim or defense that shares with the main action a common question of law or fact.

## VIII.  <u>ARGUMENT</u>

### A.    District Court Erred Denying Montgomery's Motion To Intervene

The District Court erred by denying Montgomery's motion to intervene.

Judge Snow made it clear that he opposed the motion *independently* of admitting

Montgomery's attorney:  "**even if I admit him pro hac vice, we still have to then**

**deal with his motion to intervene, which strikes me, as I said, to be a little bit**

**problematic, anyway**."  *See,* Transcript, May 14, 2015, 34:15-20. ER734.

Yet the Court has permitted 19 "interested parties" to participate in the case, who are not formal parties. *See, Certificate, supra.* Having allowed 19 non-parties to participate, intervention by Montgomery should obviously have been granted.

The U.S. Government admits that they do not know if they own any of the documents, items, or things seized from MCSO. The DoJ attorney, Raphael Gomez, admitted in open Court on July 20, 2015:

> The United States **does not know whether there are any documents in the Montgomery files** that are in fact classified or sensitive, but **there is a representation** that there were documents that were of the United States.

Transcript, July 20, 2015, Status Conference, *Melendres v. Arpaio,* Page 43 *(Emphases added) (argument by Raphel Gomez for the DoJ).* ER792.

> MR. GOMEZ: Yes, Your Honor. I believe on May 8th **the Court had issued an order to the defendants' counsel instructing the defendants' counsel to contact the United States; actually, the CIA general counsel's office**. At that point, we -- I'm an attorney in the Civil Division of the Department of Justice in Washington, D.C., and we were contacted, and pursuant to that instruction we had spoken to defendants' counsel, and with the purpose of, **since there had been a representation made that documents contained in what I'll refer to as the Montgomery documents** were either documents of the United States or documents that -- implied – were classified or sensitive.

Transcript, July 20, 2015, Status Conference, *Melendres v. Arpaio,* Page 42 *(Emphases added).* ER791.

Judge Snow ordered Montgomery's items to be handed over to the DoJ on the off-chance and mere possibility that they might include government

documents. ***This is the same "callous disregard" for his rights*** that the Honorable

Phillip Pro and Magistrate Valerie Cooke condemned in the *Nevada Orders*, *supra*.

### B.     Standing Of Montgomery To Intervene As Of Right

Pursuant to FRCP 24(a)(2), Montgomery has a right to intervene "as of

right."  Montgomery's motion is timely.  The case started to involve Montgomery

only in late April of 2015.  Montgomery filed his motion within two weeks.

Montgomery complied with FRCP 24(c) with notice and a proposed pleading.

Montgomery has a personal stake in this matter in which his property has

been seized by verbal order on April 23, 2015, and by Judge Snow's written Order,

April 27, 2015, (Doc. # 1033), ER123.  Federal courts in this Circuit have already

decided – with appeal rights expired – that the items are Montgomery's property.

### C.     District Court Erred Denying Motion Of Montgomery's Attorney To Be Admitted *Pro Hac Vice* To Case

The District Court erred in denying the motion of Montgomery's attorney to

appear *pro hac vice*.  Montgomery has a right to choose attorneys whom he

believes will be knowledgeable enough of his circumstances to represent him

effectively and meaningfully, whom he can afford, and who will protect his rights

on other topics that may be affected.

But here, especially, Montgomery would suffer unusual hardship.

Montgomery is both indigent and medically disabled, perhaps terminally ill.  He

could not afford regular counsel.  Also, the litigation is controversial and political, so that it would be extremely difficult to find a local lawyer whose livelihood depends upon regularly appearing before Judge Snow to defend Montgomery against this rush to judgment.

A person is entitled to his choice of counsel, including an attorney appearing *pro hac vice*: "A defendant's right to the counsel of his choice includes the right to have an out-of-state lawyer admitted pro hac vice." *U.S. v.  Lillie*, 989 F.2d 1054, 1056 (9th Cir. 1993); *see also Panzardi-Alvarez v.  U.S.*, 879 F.2d 975, 980 (1st Cir. 1989) ("[A] decision denying a pro hac vice admission necessarily implicates constitutional concerns."), *cert.  denied*,  493 U.S. 1082,  110 S. Ct. 1140,  107 L. Ed.  2d 1045 (1990).  A person's right to retain counsel of his choice therefore represents " 'a right of constitutional dimension'" *U.S. v.  Cunningham*, 672 F.2d 1064, 1070 (2d Cir.1982) (citing *U.S. v.  Wisniewski*, 478 F.2d 274, 285 (2d Cir.1973)), the denial of which may rise to the level of a constitutional violation. *Birt v.  Montgomery*, 725 F.2d 587, 592 (11th Cir. 1983) (*en banc*), cert.  denied, 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984); *Wilson*, 761 F.2d at 278-79. The right to retain counsel of choice stems from one's right to decide what kind of case he wishes to present.  *U.S. v.  Nichols*, 841 F.2d 1485, 1502 (10th Cir.1988).

"Attorneys are not fungible" and often "the most important decision a defendant makes in shaping his defense is his selection of an attorney." *U.S. v.*

21

*Laura*, 607 F.2d 52, 56 (3d Cir.1979); *Nichols*, 841 F.2d at 1502; *Glasser v. U.S.*, 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942).

Judge Snow denied Moseley's application to be admitted *pro hac vice* on unsupported speculation that there could be a conflict of interest. But the record does not contain any basis for disqualification. Moseley filed a "Clarification of Motion for Admittance *Pro Hac Vice* of Jonathon A. Moseley," dated May 13, 2015, (Doc. # 1080), ER466, [33] stating that *(emphasis added):*

> Neither Dennis L. Montgomery nor his counsel are adverse to Sheriff Arpaio, his deputies, the Cold Case Posse, or MCSO **in any respect**, particularly since this case involves a contempt proceeding over allegations of profiling illegal immigrants.

No party has moved for disqualification of Moseley as counsel for Montgomery, so no facts have been entered in the record to establish any conflict.

Simply reciting that Moseley represents Arpaio in an unrelated matter does not establish any conflict of interest. Disqualification applies "where serious conflict exists." *See Dunton v. County of Suffolk*, 729 F.2d 903, 909 (2d Cir.1984), *amended* 748 F.2d 69 (2d Cir.1984). *The proponent of disqualification must demonstrate the existence* of a conflict of interest which is "serious."

Failing to follow the law of this Circuit, Judge Snow merely suggested that Sheriff Arpaio and MCSO staff – when compelled to do so by Judge Snow's

---

[33]     *See, also,* Email from Larry Klayman to Amy Lake and Mike Zullo, April 29, 2015, Exhibit 2, to Plaintiffs' Opposition to Motion for Admission Pro Hac Vice of Larry Klayman, July 28, 2015 (Doc. # 1198-2). ER243.

persistent questioning *sua sponte* – described dissatisfaction with the results found by Montgomery's research.

Mere differences of opinion – particularly when the trial judge compels one person against their will to speak ill of another – do not establish a conflict of interest within attorney-client representation. The law considers conflicting interests, not mere differences of opinion.

Furthermore, Judge Snow's analysis is hopelessly inadequate and inconsistent with the facts. There is nothing in the record to clarify whether Montgomery did not find information satisfactory to Sheriff Arpaio because there was nothing to be found, no matter how well Montgomery did his work, if Sheriff Arpaio and Montgomery were confused about, misunderstood or disagreed about the task each thought Montgomery was supposed to be working on, or if there were miscommunications through MCSO ranks. Judge Snow forcing Sheriff Arpaio to opine on Montgomery's work does not create a conflict of interest, certainly not without clarification and exploration of what that meant.

### D. The Two Lawsuits Are Not Related, And There Is No Conflict Of Interest

The relevant test for disqualification is whether the other representation is "substantially related" to the current representation. *See Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1325 (9th Cir.), *cert. denied*, 429

23

U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). A substantial relationship is

found if the factual contexts of the two representations are similar or related.

*Trone v. Smith*, 621 F.2d 994 (C.A.9 (Cal.), 1980) *(emphasis added).*

> We held that the "relevant test for disqualification is whether
> the former representation is ***'substantially related' to the
> current representation.***" Id. at 998; see Gas-A-Tron of
> Arizona, supra, 534 F.2d at 1325; *Westinghouse Electric Co.
> v. Gulf Oil Corp.*, 588 F.2d 221, 223 (CA7 1978).
> "Substantiality is present ***if the factual contexts of the two
> representations are similar or related***." *Trone*, supra, 621
> F.2d at 998.

*Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85 (C.A.9 (Mont.),
1983) *(Emphases added).*

But, here, the "***the factual contexts of the two representations***" are <u>not</u>

***"similar or related." Id.*** Representation of Montgomery in the current case shares

no operative facts nor factual circumstances in common with Arpaio's challenge to

the constitutionality of Obama's executive order on amnesty for illegal aliens.

Moreover, the complete irrelevance of Montgomery to the lawsuit – even

though he is being harmed in fact – destroys any claim of a conflict of interest.

Disqualification applies "where serious conflict exists." *Dunton v.

County of Suffolk*, *supra.* There can be no serious conflict on matters which are

completely immaterial in the case. Since nothing concerning Montgomery is

material in *Melendres v. Arpaio*, nothing concerning Montgomery can be the basis

of a "serious" conflict of interest in this case.

As a result, there is no conflict of interest between Moseley's representation of Montgomery *pro hac vice* in this case and his representation (working under Larry Klayman) for Sheriff Joe Arpaio contesting the legal validity of President Barack Obama's executive grant of amnesty to illegal aliens.

### E. District Court Erred Denying Montgomery's Motion For Recusal

The Court erred by denying Montgomery's motion for recusal. Montgomery filed his affidavit under 28 U.S.C. § 144 as Exhibit 2 (Doc. # 1067-2), ER597, to his Intervenor Dennis L. Montgomery's Motion to Disqualify Judge G. Murray Snow Under 28 U.S.C. § 144 Motion for Recusal, in which he also claimed additional grounds requiring recusal of Judge Snow under 28 U.S.C. § 455. Montgomery relied upon the legal opinion of Professor Ronald Rotunda, a renowned expert on Professional Responsibility and Constitutional Law, attached as Exhibit 1; ER578. Montgomery's affidavit compelled Judge Snow to "proceed no further" in the case" and requires "another judge shall be assigned to hear such proceeding," without subjective analysis or discretion under 28 U.S.C. § 144:

> "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias or prejudice

25

exists….."

A judge's impartiality "might reasonably be questioned" by the public where the judge's wife volunteers that the judge hates the defendant and will do anything to remove him from office[34] – and neither the judge nor his wife have denied it, sought to explain the admission, nor apologized.

Moreover, Judge Snow has "personal knowledge of disputed evidentiary facts concerning the proceeding." Judge Snow will have or already does have a private explanation from his own wife of these disputed facts and events.

Any competent and uncompromised defense attorney must call Judge Snow and his wife as witnesses in order to present a thorough defense to whatever charges Judge Snow plans to bring. Judge Snow is likely to preside over testimony and cross-examination of his own wife,[35] who will be testifying about him.

And Judge Snow ordered $4 million of taxpayer funds paid to Covington & Burling where his brother-in-law is a partner.[36] The public would reasonably question a judge's impartiality after ordering $4 million paid to the law firm.

The demands for recusal are timely. Most of the circumstances requiring recusal were created by Judge Snow himself starting only on April 23, 2015.

---

[34] Intervenor Dennis L. Montgomery's Motion to Disqualify Judge G. Murray Snow Under 28 U.S.C. § 144 Motion for Recusal, May 7, 2015 (Docs. # 1067, 1058); ER552,541.

[35] *Id. at 9.*

[36] *Id.*

The courts strive to eliminate even the appearance of bias. "Thus even if there is no bias in fact, an appearance of bias or prejudice requires recusal if it is sufficient to raise a question in the mind of 'the average citizen' about a judge's impartiality." *York v. United States,* 785 A.2d 651, 655 (D.C. 2001). "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. . . ." ABA Code Of Judicial Conduct Canon 3(C)(1) *see also Scott v. United States,* 559 A.2d 745, 750 (D.C. 1989) (en banc).

An impartial judiciary is a fundamental component in any proceeding, is protected by the Constitution. *Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972). *See also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980).

Disqualification or recusal is required when there is even the appearance that "could suggest, to an outside observer, such a 'high degree of favoritism or antagonism' to defendants' position that 'fair judgment is impossible.'" *Liteky v. United States*, 510 U.S. 540, 555, 127 L. Ed. 2d 474, 114 S. Ct. 1147 (1994)); *See also Jackson v. Microsoft Corp.*, 135 F. Supp. 2d 38, 40 (D.D.C. 2001) (recusal required on an appearance of personal bias or prejudice).

> The disqualification statute, 28 U.S.C. §144, is **mandatory and automatic**, requiring only a timely and sufficient affidavit alleging personal bias or prejudice of the judge. The judge is a silent defendant, unable to make findings on the truth or falsity of the affiant's allegations, and truth must be presumed. *United States v. Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965)(Emphasis added); and the allegations may be based upon information and

belief, *Berger v. United States*, 255 U.S. 22, 34, 65 L. Ed. 481, 41 S. Ct. 230 (1920).

*Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 576 (D.C. 1967).

Under § 455(a), a judge must recuse himself if a reasonable person with knowledge of all the facts would conclude that his impartiality might reasonably be questioned. *U.S. v. Nelson,* 718 F .2d 315, 321 (9th Cir. 1983).

Further, the Supreme Court has held that a violation of section 455(a) occurs even if a judge is unaware of the circumstance that created the appearance of impropriety. In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), the trial judge was on the board of trustees of a university that had a financial interest in the litigation, of which he was unaware. The court of appeals vacated the judgment, and the Supreme Court agreed. Because the purpose is to promote public confidence, the Court observed that recusal "does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew."

Close questions should be decided in favor of recusal. *See Republic of Pan. v. American Tobacco Co*., 217 F.3d 343, 347 (5ᵗʰ Cir. 2000); *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998); *Nichols v. Alley*, 71 F.3d 347, 352 (10ᵗʰ Cir. 1995); *U.S. v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *U.S. v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989).

In *SCA Servs. v. Morgan*, 557 F.2d 110 (7th Cir. 1977), the judge's brother was an attorney in the firm appearing before the judge. "This appearance of partiality begins with the natural assumption that brothers enjoy a close personal and family relationship and, consequently, would be inclined to support each other's interests. … [T]he belief may arise in the public's mind that the brother's firm and its clients will receive favored treatment…." *Id.* at 116.

Also on point is *In re Aetna Casualty & Surety Co.*, 919 F.2d 1136 (6th Cir. 1990), where the U.S. Court of Appeals for the Sixth Circuit, sitting en banc, required recusal. The trial judge's daughter's law firm represented four of seven claimants. The judge separated the cases to try only the three claims in which his daughter's firm was not involved. On mandamus, the court reversed because the cases remained intimately connected. Further, 28 U.S.C. § 455 requires:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> > * * *
> > (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
> > > * * *
> > > (iv) Is to the judge's knowledge likely to be a

material witness in the proceeding.  * * *

Also, the Code of Conduct for United States Judges **CANON 2** requires:
> * * *
> (B) Outside Influence. A judge should not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment. * * *

**CANON 3** requires:

(C) Disqualification.
> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:
> (a)the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> * * *
> (d)the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is:
>> * * *
>> (iii) known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; or
>> (iv) to the judge's knowledge likely to be a material witness in the proceeding; ….

## IX.    <u>CONCLUSION AND REQUEST FOR RELIEF</u>

This Court should order vacate and reverse Judge Snow's orders, grant

Montgomery's motion to intervene and the admission of his chosen attorney *pro*

*hac vice,* and grant the Appellant's motion ordering the recusal of Judge Snow.

Dated:  October 23, 2015                    Respectfully submitted,

                                               /s/ *Larry Klayman*
                                              Larry Klayman, Esq.

30

General Counsel
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Avenue N.W., Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Email: leklayman@gmail.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the length limits set forth at Ninth

Circuit Rule 32, being no more than 30 pages long and approximately 7,318 words.

The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and the

type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared

in a proportionally spaced typeface using Microsoft Word in 14-point Times New

Roman style.

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015, I electronically filed the foregoing
brief with the Clerk of the Court for the U.S. Court of Appeals for the Ninth
Circuit by using the Ninth Circuit's CM/ECF system, causing it to be served upon
the following counsel of record in the case through CM/ECF:

Stanley Young, Esq.
Andrew Carl Byrnes, Esq.
333 Twin Dolphin Road
Redwood Shores, CA 94065
syoung@cov.com
650-632-4700
Attorneys for Plaintiffs
(Service via Email)

Daniel Pochoda, Esq.

ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
dpochoda@acluaz.org
602-650-1854
Attorney for Plaintiffs
(Service via Email)

Cecilia D. Wang
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
cwang@aclu.org
415-343-0775
Attorney for Plaintiff Melendres
(Service via Email)

Thomas P. Liddy, Esq.
CIVIL SERVICES DIVISION
MARICOPA COUNTY ATTORNEY'S OFFICE
222 North Central Avenue, Suite 1100
Phoenix, AZ 85005
liddyt@mcao.maricopa.gov
602-506-8541
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office
(Service via Email)

Michele M. Iafrate, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
miafrate@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office
(Service via Email)

Deborah L. Garner, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
dgarner@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office
(Service via Email)

Melvin McDonald
JONES SKELTON & HOCHULI, PLC
2901 N. Central Avenue, Suite 800
Phoenix, AZ 85012-2728
mmcdonald@jshfirm.com
602-263-1700
Attorney for Defendant Sheriff Joseph Arpaio
(Service via Email)

Andre Segura, Esq.
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Fl.
New York, NY 10004
asegura@aclu.org
212-549-2676
Attorney for Plaintiffs
(Service via Email)

Anne Lai
UCI School of Law
401 E. Peltason Drive. Suite 3500
Irvine, CA 92616
alai@law.uci.edu
949-824-9894
(Service via Email)

Jorge M. Castillo
MALDEF

634 S. Spring Street, 11th Fl.
Los Angeles, CA 90014
jcastillo@maldef.org
213-629-2512
Attorney for Plaintiffs
(Service via Email)

Richard K.  Walker
WALKER & PESKIND, PLLC
16100 N.  71st Street, Suite 140
Scottsdale, AZ 85254-2236
rkw@azlawpartner.com
480-483-6336
Attorney for Defendant Maricopa County
(Service via Email)

/s/ *Larry Klayman*
Larry Klayman, Esq.
General Counsel
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Avenue N.W., Suite 345
Washington, DC 20006
Telephone: (310) 595-0800
Email: leklayman@gmail.com